I notice that there are co-counsel listed would you give us an idea of how you intend to split your time? Well your honor the case is not a consolidated appeal it was I think just consolidated for arguments. Right. I was assuming we'd each each get ten minutes a piece. It's entirely up to you you can share the 20 minutes any way you'd like. I think ten a piece your honor. Very good. All right thank you again good morning your honor Stephen Lubliner on behalf of appellant Norma Hernandez-Orellana. Ms. Hernandez stands convicted of counts involving two incidents a June incident and a July incident. I'm going to start by focusing on the June incident and the alien issue. Now there are two ways of asking the question we have to ask it the right way. We talk about it in an armchair conversation way were these men these minimally processed anonymous men aliens we can probably say sure probably because the alternative is thinking well there's some form of non-feasance or malfeasance by the agents at the checkpoint and sending people out of the country who arguably had a legitimate right to be here. Maybe that happens a lot maybe it doesn't I don't know. But did the government prove alienage? I think the answer has to be absolutely not. What do we do with the admission by you the post arrest admission by I think it was your client was it not that she knew they were illegals? I don't think she ever said she knew they were illegals she said that none of them have any papers. I think that's the closest thing that that she said and she said that she got paid. The statute says that you got to have the paper if you're gonna be here correct? That's the permission of the Attorney General. This isn't it's not an unlawful reentry case. No but but you've got to have when we talk about papers whether it be a green card or some form of authorization to be here if you're not a US citizen. So I maybe we're just arguing over words but but it seems to me that that is probably sufficient evidence to establish knowledge on the part of your client either that she knew they were illegals or that she acted in reckless disregard of whether they were or were not illegal. I think your honor is probably correct but we're not arguing the element of knowledge and we're not arguing whether the government actually proved that these men were aliens. Was there a specific objection to the failure to prove was there a rule 29 motion on that issue raised at trial? There was a rule 29 motion raised at the end of at the end of trial. On that issue. I was I was actually going over this in my mind I I don't recall thinking that there had been a rule 29 problem in the case. The government has not argued that the plain error standard of review should apply. Let me ask the question in a different way. I mean what notice did you give to the district court at trial that this was an issue before the case was submitted to the jury? That that the the proof of alienage was an issue? Yeah I mean it seems to me Mr. Lieberman that this is no different from the failure to object to the lack of a certificate of insurance in a bank robbery prosecution. It's incumbent on the defense if that is truly a defense in the case to raise by way of a rule 29 motion or to move for a new trial I guess after the jury convicts to challenge the fact that the government never proved up the certificate of insurance. What's your record here on that? I just was I didn't see anything in there to indicate that any notice was given whatsoever about the defense that this was a legitimate issue. Well as I stand here I know there was a rule 29 motion made and denied. I do not remember the specific issues that were brought up. The government has not argued that we're bound by the plain error standard of review. But I submit your honor that even if we are, if you look at the cases in the US Supreme Court and this court's precedents as well, when you're looking at whether the substantial rights of a defendant were affected, whether you're looking at the fairness integrity of the public perception of the judicial proceedings are implicated, it's a bit of a tongue twister, what you end up looking at is the record. And I think the cases are fairly clear that when you're dealing with a substantial evidence issue there's really very little difference between the plain error standard of review and the ordinary standard. I think you'd have a much, with me you'd have a much stronger argument if we didn't have such pervasive evidence of a major alien smuggling operation. If we were talking about a one time incident where a defendant was prosecuted for bringing in a single alien, it would seem to me to be a much stronger case. But where you've got all this evidence, written records of pay and owe sheets and load house and numerous acts of importation, this just seems to me to be a reach under the theory that you're urging us that a gross injustice has occurred here. I think the gross injustice that occurs simply would stand in allowing a person to be convicted and serve a sentence under count eight based on the government having not proved beyond a reasonable doubt an element of the charge defense that was required to approve. Counsel, don't you have a pretty strong argument on the bringing to conviction that all of these activities, at least that were in evidence, took place inside the border? Yes, and those are the counts one, two, and three. And I was going to move on to those counts, Your Honor. I just want to, again, try to distinguish on the count eight, which is the June incidents, the proof of alienage, the element of alienage, as opposed to what Ms. Hernandez knew or should have known about the status of these men. Because it's certainly suspicious. But all we have on proof of alienage is, as the Court seems to think, her statement that they didn't have any papers. And that's exactly what, in the Camacho-Duvalo's case, the Court said that's not enough, because people can go around without papers all the time, and that is simply not enough to say that. Which is why I guess I asked the question of you, that I can certainly see that argument being a strong argument. But on this record, no, I think you might want to move on. Technically, technically. Okay. I hear you. Healing, no, but technical, okay. I hear your argument, but I'm actually more interested in the issue that Judge O'Scanlan raised, because I think that is a more substantial one. Well, Counts 1, 2, and 3, this case is, I submit, pretty much the Lopez case. We have someone who is clearly a transporter, clearly a harborer, clearly, I think it's fair to say, had a financial interest in committing transporting and harboring, although it was not charged in the indictment that she had committed it for purposes of financial gain. I think for purposes of argument, we don't dispute that. And within the language and the world that Lopez defines as they parse out the various statutes, I think it also has to be assumed that much like a fence in stolen goods, people who commit the crime of transporting and people who commit the crime of harboring have sort of an overarching vested interest in that there be people out there who commit the crimes of bringing in or who commit other immigration-related crimes that result in aliens being present that need transporting here and there. So to say that she had this financial interest, to say that she was, because she was paid, even if we assume that the ledger is admissible against her, which I argue it wasn't, even if we assume that she was paid to transport, even if we assume she was sitting around talking about transporting and so on and so forth and putting people in the car and directing traffic on the way back, it's still the Lopez case. And I do want to take issue with one point that the U.S. attorney made about Lopez. I don't think that Lopez was purporting to define a very specific limited situation that fell out of the broad boundary of potential aiding and abetting liability. There is some discussion fortifying the result about, well, she called Jose. Jose was her second choice. Excuse me, Ms. Lopez was Jose's second choice. Jose called her after the offense had been committed and so on and so forth. I do not think that those are meaningful differences in terms of the result that should be reached when you have someone that you're trying to link to bringing in through transporting. What's your response to this question? In Lopez, at page 1199 of 484F3rd, Judge Reinhart notes in the text of the opinion, we need not determine today, however, precisely what actions may and may not render a defendant guilty of aiding and abetting because Lopez's actions do not qualify under any definition. Isn't this the case that we left open in Lopez that squarely presents a theory of either aiding and abetting or co-conspirator liability for engaging in a large-scale smuggling operation? I suppose in the sense that it presents slightly different facts in that Ms. Hernandez was arguably not called after the fact. So in that sense, it may fall into something that requires this court to decide. We've got multiple acts in which she's involved. The June incident, the July incident. We've got registering smuggling vehicles in her name. We've got her active presence at the house. We've got the records that were seized from her car, the car registered to her, and records seized from the garage of the house where the testimony was that she spent time, all showing crossings or could be inferred by the jury to be crossings of illegal aliens. And sums of monies that were collected, payments that were being made to her and to the co-conspirator. Why isn't this just a classic aiding and abetting case with much different facts than what we had in Lopez? Well, first of all, on the facts that Your Honor cites, I want to parse out a few things. The June incident was not connected to the July incident where Ms. Drury was also involved and the ledgers were involved. The June incident involved some woman. But we've got a guilty verdict on the conspiracy count as to all three defendants. Why aren't we obligated as the appellate court on review to review that evidence in a light most favorable to the government, which would be just the opposite of what you just said, that we'd have to infer that they were related, that they were all simply overt acts in furtherance of the enterprise's activities under... This is with respect to the conspiracy count as opposed to the other two bringing two counts. I just don't see anything... Whatever you want to say that Ms. Hernandez might have been involved in bringing in with this woman Letty, it was not involved in anything in terms of the conspiracy as far as the July incident. Now, we have slightly stronger evidence of Ms. Hernandez' linkage to the July events than arguably there was in Lopez, but I submit it's a distinction without a difference. I think if you tease out Lopez and you say, well, would it have made a difference if Jose had called her first instead of second? I submit, no. Why should it make a difference? Would it have made a difference if Jose had called her instead of said, hey, we've got these people who are already here. Can you come get them? Okay, I'll come get them. Just guilty of transporting. Or if he had said, we've got these people who are on their way. Can you come get them? Yes, I'll come get them. She's still just guilty of transporting. Without, if there was no other evidence, then when the offense is involved and she says, oh, that's wonderful. Let me help. Classic aiding and abetting, encouraging, facilitating language. I'm just not sure I'm following you. I mean, the record here is just so much stronger with regard to inculpatory evidence as to both of these defendants that. Well, I'm not here to defend Ms. Drury's. I understand. Speaking of which, you're down to seven and 45 seconds, so you're treading into your co-counsel's time, but you may answer the question. I'm sorry, can you strike the question? Okay. I don't want to waste any more time. Thank you, Your Honors. Thank you, Counsel. No, it's your side. You're the appellant's side. Your Honors, David Zuckman, on behalf of Ms. Drury, I've leaned from Your Honors' commentary that I shouldn't go very big on the sufficiency question. So I will focus my argument on the jury instruction claim that Ms. Drury brings. Now, it's conceded tacitly by the government that the Angwin instruction was obviously an error. Now, it's an understandable error in that this was a pre-Lopez trial, but it's an error nonetheless. And because we have an error, this instruction affects counts one through three. The jury was told that these bringing in offenses continue until the aliens reach their terminus within the United States, and that's not true. Now, when Your Honor was speaking of sufficiency, of course, the question is, could a reasonable fact finder make this reasonable inference? But in a jury instruction context, we flip that. The question is, does the government have overwhelming evidence showing that the only interpretation of this evidence is that Ms. Drury aided and abetted the crossing of these aliens? And just so I perhaps enervate the government's point, they're going to make a Rule 30 argument that it wasn't properly preserved because the objection wasn't made in the district court. That was not brought up in the briefs. However, there is a discussion of the extension of aiding and abetting liability on page 313 of the reporter's transcript in the government's S.E.R. Are we talking about the motion to settle? No, no, I'm talking about the jury instruction. But all it would do, even if the government was correct on that point, it would push me into the plain error review. But I'd still have, you know, because we have Lopez, I'd have obvious error already. I'd have the first two parts, and it would be about an element, so it would affect her substantial rights. And I think that that would be something your honors would wish to correct. And so it would just be a burden. Let me see if I can help you focus my concern. I'm looking at the conspiracy count as it was charged in the indictment. Yes. And I think your strongest argument is that the scope of the conspiracy, as listed on page 2 starting at line 5, is to bring to the U.S. for purposes of gain the aliens. But then the grand jury charged various means and overt acts that are carried out in furtherance of it. And it's pretty careful to delineate those acts that your two clients are charged with and those acts that are committed by either known or unknown other conspirators. So my question for you is, by virtue of the way the indictment is drafted, has the government nonetheless insulated itself from the attack that you are making? Because in order to find these defendants guilty, the jury had to find that they joined this conspiracy and that an overt act was committed. But it could very well have been committed by someone else. Right. And it still rendered them liable under a conspiracy theory, even though they might not be convicted under – be able to be convicted under a substantive bringing to theory under Lopez. I think that's where the Angwin instruction comes in. Because the government's – the theory that was argued to the jury and a version of the evidence presented was that these – that Ms. Drury and Ms. Hernandez-Oreana were responsible for the transportation of these aliens within the United States, which constituted liability under the Angwin instruction for the bringing in. So there is a version – there's a misinstruction of the jury and a version of the evidence that could mislead the jury into convicting on the conspiracy count because they believe that it was sufficient for the government merely to show that Ms. Drury – you know, that the aliens weren't at their final destination, and Ms. Drury and Ms. Hernandez-Oreana had acted before those aliens had reached their final destination. If we were talking sufficiency, I would agree with Your Honor's point because that would be a question of whether you could uphold the jury's findings based on the acts of other conspirators. Let me draw you in an analogy and see if you can help me with this. I'll do my best. What if we were dealing with a conspiracy to import drugs into the United States, and the defendant's sole act was to wait on the beach and help in the offloading of the drugs – let's say marijuana, bales of marijuana that were transported to the beach by tender boats from the mothership that had clearly actually crossed the line? Sure. If the jury were to find that there was an overarching importation conspiracy, couldn't they convict the defendants of participation in the conspiracy, even though their actions were related only to the acts of unloading the boats at the water's edge? Yes, if they – this is the baton theory, I suppose. Your Honor – I mean, I'm familiar with Your Honor's, too, immigration opinions regarding the aliens who have acted. I have expressed my views before, but I'm also bound to apply the case law as the circuit. I noted that Your Honor's done that in an unpublished opinion as well. Well, I think that if you can prove that the person is acting before the offense has been completed of bringing in the drugs, in Your Honor's analogy, I think that's just like the recent Supreme Court case about the bomb, carrying the bomb at the time of making the material misrepresentation. That goes to the simple definition of the word during. If you have a participant's action which is occurring prior to the importation actually making it to the United States, then you have proven the two parts. But in this case, the jury was told, we don't need to find that. All you need to find is that Ms. Drury and Ms. Hernandez-Oriana acted before the aliens met their final destination in the United States. That's what they were told. So there is a wrong version of a wrong theory of liability. That was the theory that was argued by the government in closing. It's not a debatable point about whether the jury was misconstructed and whether that theory was actually advocated. So then the government has to prove that this is the only possible construction of the evidence that Ms. Drury and Ms. Hernandez-Oriana acted before these particular aliens came to the United States. I understand the ledger is not good evidence. I understand the notebook is not good evidence, but it's just names and numbers. There's no thing that says, and I crossed these people internationally, and these people acted on the south side of the border. It is just as resolvable with a domestic harboring and transportation scheme. In fact, the conduct that Ms. Hernandez-Oriana engaged in is a domestic conduct. The only substantive act we know of fits outside of the Lopez model. If we were to accept your argument, it seems to me that we would have to reverse the substantive bringing to accounts, no question about it, on the basis of Lopez. But what do you do with that body of law that says that the jury need not agree on the same overt acts? All they need to agree is that all 12 of them must agree that overt acts were carried out in furtherance of the conspiracy, that they had joined. There's something in the record. Yeah, and something in the record is important. Yeah, I think that's the sufficiency question. I think that's the question of whether there would be double jeopardy precluding a retrial versus if you say that there's a wrong theory of liability that was advocated, then it doesn't matter whether there were possible unanimity issues with respect to various overt acts. So, I mean, I think that so long as I've proven that there is a bad instruction that could have misled the jury into convicting on a wrong theory of liability, I think they reverse. And it's important because the whole substantial risk enhancement is based on pre-order action. I know I'm out of time. Thank you. Thank you, counsel. The time for your side has expired. We'll hear from the government. Good morning. May it please the Court. William Maris on behalf of the United States. Mr. Maris. As Your Honor touched on a moment ago, there was overwhelming evidence here that these two women were at the heart of an alien smuggling conspiracy that spanned the border and was responsible for smuggling dozens of illegal aliens into the United States. The evidence that you... But you didn't charge the conspiracy that way. That's the problem I'm having with your argument. The conspiracy could have been charged to essentially conspire to smuggle aliens to the United States and carry them to various places and so on. Instead, it more specifically charges that the conspiracy was to bring to the United States, which then triggers the whole Lopez issue as to whether or not the crime was complete at the time they were dropped off at the load house. That's correct. And the reason behind that was that the statutory construction of 1324, we decided to charge a 371 conspiracy for the 1324 bringing in for financial gain. There's actually a conspiracy count in the other half of that, in the other half of the statute of 1324, its own freestanding conspiracy charge. So that's why we charged the 371 alone for that purpose. But to get back to Your Honor's question, I think that... they're not necessarily all tied together. Presumably, we could reverse, for example, on the bringing to, aiding and abetting charges and still look at the conspiracy separately. Could we not? Yes, and the government would encourage Your Honors to do that. And the reason is... To reverse? No. Separately, if Your Honors are still inclined to reverse on the bringing to counts, which I'd like to try to persuade you otherwise in a moment. But as far as the conspiracy counts go here, the conspiracy here, more so than the substance counts, incorporates these ledgers and the activities going back as far as June 19th. In addition to the ledgers, though, there was also the expert testimony of Agent Desrosiers, where he interpreted those ledgers for the jury. His interpretation included definitions of the word, which meant guide, which meant senior guide as a term of endearment. And he actually defined for the jury that the guide is the person who brings these people across the border into the United States. And he used words to that effect. The importance of that is that these ledgers then tie these two women to conduct south of the border. In addition to the testimony of the two material witnesses, who both testified that they had made arrangements south of the border and had come through in a vehicle with two other illegal aliens. A point I'd like to note for Your Honors is that when the four material, or when the four illegal aliens crossed into the United States, two went one way and two went another. And the government would submit that that fact clearly indicates that these two material witnesses were designated for this stash house and these women south of the border, demonstrating substantial involvement by these two women prior to the entry of these two material witnesses and the completion of the bringing to for financial gain charge. In addition, there was the testimony of Ms. Osuna, which also corroborates the conspiracy charge. And the government would submit brings this case outside the scope of Lopez. And Ms. Osuna testified that she observed these two defendants exchanging money. She testified that these two, at least Ms. Drury, brought people to the house and both of these defendants brought illegal aliens from the house. She said people from the house. So Ms. Osuna's testimony is critical in fleshing out the entire conspiracy by showing what had happened at that load house prior to the time when these two material witnesses crossed. Who was the witness that testified that he paid $3,300 for the whole family to come across? I believe it was $3,300, and my understanding was it was per person, but that would be Mr. Contreras. He was the material witness, the husband. Ms. Camarena was the wife, and I think she said $3,300. Does that go to both defendants or to one to the exclusion of the other? To both defendants would be the government's position. The two material witnesses both said they made arrangements prior to entering the United States. Both material witnesses said that the price went up, or I believe Mr. Contreras said the price went up, when they were apprehended in the hills coming through and then needed to go through the port of entry. It went up from a number around $2,300 to the $3,300 number. But the fact that these two material witnesses were both paying this smuggling organization, the government would argue, brings that out of the Lopez decision and does apply to both defendants. Was one of the defendants found with a large sum of cash? Yes, Your Honor. Ms. Drury, in her purse when she was apprehended, had I believe it was $1,670. She also on that envelope had the phone number that tied to a number that was found in the notebook in the garage. Mr. Zugman alluded to a fact a moment ago that I'd like to address, Your Honors, and that is the government's brief does indicate harmless error review. In looking at the record, however, the objection that the defense made was a blanket objection to the jury instructions that the court gave to the exclusion of the instructions that were submitted by the defendant. In other words, they made a blanket objection to any instruction that they hadn't submitted. And this court has stated on at least two occasions, and I would say, Your Honors, to United States v. Clinger at 128F3705, that such a blanket objection is insufficient to preserve the issue for review. And the importance of that is that on these bringing to for financial gain counts, the standard of review would then become for plain error. And under the plain error standard of review, assuming there is error and it is plain and it did affect substantial rights, I think the overwhelming nature of the evidence here makes clear that this did not seriously affect the integrity of the judicial process or impugn the public reputation of the judicial process in this case. Why wouldn't it be plain error in light of Lopez at least as to the two bringing to counts? What is it, counts two and three? Yes, Your Honor. The Lopez argument was sufficiency of the evidence. And if I could just digress for a moment, I would note that the defendants raised separate arguments on this. Ms. Hernandez does not raise the jury instruction issue. That's only Ms. Drury. So the sufficiency of the evidence on counts two and three is the only issue that Ms. Hernandez raises. But even aside from that, why it would not be plain error under this standard, the government would submit that, again, it's a fact-based determination, going to the facts of this case, distinguishing it from the Lopez decision. And Your Honor spoke a moment ago about passage in Judge Reinhart's majority opinion, as well as footnote 19, which I'm sure Your Honor is familiar with, where the court discussed a smuggling organization. And when a smuggling organization relies on the secondary transporter to essentially accomplish its mission, and therefore encourages or induces the secondary transporter, that that case would be distinct from the Lopez situation. And as Your Honor began this argument at least, the facts here clearly bring it out of the Lopez standard. Unlike in Lopez where there were the two phone calls and the registration of the vehicle, here there's conduct spanning almost a month in which dozens and dozens of illegal aliens were brought into the United States by this smuggling organization. Regarding the severance issue, I'll just briefly touch on that. The issue there was whether or not the redacted statement could be admitted. We've made clear in our brief that the parties worked closely on this issue to come up with a redacted statement that all the parties approved. The issue raised by Ms. Drury is that the redacted statement still, however, referred to her and made clear to the jury that it was incriminating her. I would refer Your Honors to the cross-examination of the agent that brought in that statement, and that was the cross-examination consisted of the attorney for Ms. Drury at the trial court inserting her name into the cross-examination saying, isn't it true, Ms. Drury said she had gone with the defendant down to Tijuana or was intending to. I think that was a tactical decision by Ms. Drury's counsel to use the false exculpatory of Ms. Hernandez to his own benefit. I would bring that to Your Honor's attention. Finally, with regard to the alienage issue that was raised with regard to Ms. Hernandez, the issue there, as Your Honor said, is the statements of Ms. Hernandez bringing us far away from the case cited by the defense. Specifically, those statements are Ms. Hernandez said when she was arrested that she was crossing people. She had been told that the checkpoint would be down, and it was only as she approached it that the checkpoint went up and she found herself fourth in line. When she was first encountered by the Border Patrol agent, she said in response to a question, do you have papers, she said, no, nobody does. In addition to that, you have her own statement where she said she was getting $50 per person, a total of $500 to cross these people through the checkpoint. It should be clear that that portion of the statement to address any brutal concerns was with regard to Letty, paid for a third person by the name of Letty, not Ms. Drury, her co-defendant. If Your Honors have no further questions, the government will submit. No further questions. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Tallman, Singleton